**SO ORDERED.**

**SIGNED this 18th day of May, 2023.**



Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use and not print publication

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

**Vicki Lyn Buttel,**
                **Debtor.**

Case No. 22-40542
Chapter 13

## Memorandum Opinion and Order Sustaining
## Regional Acceptance Corporation's Objection to Confirmation

Regional Acceptance Corporation, a creditor whose claim is secured by a 2019 Mitsubishi Eclipse, objects to confirmation of Debtor's Chapter 13 plan, which proposes to cram down the secured claim by paying the present value of the vehicle and to release the lien securing the claim at the time

designated by § 1325(a)(5).[1] The vehicle was purchased prepetition by Debtor and a nondebtor third party. The two purchasers are jointly liable for the purchase money debt and jointly granted the seller a lien in the vehicle. Creditor objects to confirmation with respect to Debtor's proposed collateral value and lien release, contending the lien on the vehicle should not be released until the entire balance owed is paid in full, rather than when Debtor is discharged.

The Court addresses the requirements of § 1325(a)(5) and concludes when a secured claim arising under the foregoing circumstances is crammed down, the value of the collateral must be at *least* the value of the debtor's interest in the vehicle, which in this case is the value of Debtor's one-half interest. Further, the lien released at the time of discharge is the lien granted by a debtor in her interest in the collateral, and does not include release of the lien granted by a third party. The proposed plan therefore will not be confirmed. Debtor may file an amended plan valuing the collateral in light of this opinion. In addition, Debtor's amended plan must include a nonstandard provision addressing the extent of lien release at the time of discharge consistent with this opinion.

---

[1] 11 U.S.C. § 1325(a)(5). All references in the text to Title 11 shall be to the section number only.

I. **Background Facts**

In May 2019, Debtor Vicki Lyn Buttel ("Debtor") and Kerry H. Kuehn ("Co-debtor"), who has not filed for relief in this case, entered into a retail installment sale contract with Lawrence Mitsubishi for the purchase of a new 2019 Mitsubishi Eclipse ("Vehicle"). The seller financed $31,298.03 at the annual percentage rate of 14.45%. The purchasers executed a security agreement granting the seller a security interest in the Vehicle. The sale contract was assigned to Regional Acceptance Corporation ("Creditor"). The lien was perfected under Kansas law.

Debtor filed for relief under Chapter 13 on September 13, 2022. Debtor's proposed three year plan, which uses this District's model plan's Section 11 for treatment of claims secured by personal property,[2] crams down Creditor's claim by providing the collateral value is $13,004 to be paid through estimated monthly payments of $217. As to lien retention and release, the plan includes the following standard provision: "Any secured creditor whose debt is secured by personal property will retain its lien pursuant to § 1325(a)(5) and shall be required to release the lien at the time designated by § 1325(a)(5)."

---

[2] D. Kan. LBR Form Chapter 13 Plan.

Creditor filed a secured proof of claim for $32,786, with interest payable at the annual rate of 14.45%. Creditor's plan objection requests that the collateral value be $20,854, the JD Power Vehicle value, and, because the debt was incurred with the non-filing Co-debtor, that "the plan be amended to reflect that the lien shall not be released upon discharge and shall not be released until the entire balance due and owing under the contract is paid in full."[3] Debtor responds that the plan should be confirmed, since it complies with § 1325(a)(5), but construes the plan to require release of Creditor's entire interest in the Vehicle at the time discharge is entered.

## II. Analysis

### A. Cramdown

A Chapter 13 debtor's plan must address payment of creditors' allowed claims against the debtor and the debtor's property. A creditor may file a proof of claim, and such claim is deemed allowed, unless a party in interest objects. Section 506(a)(1) provides, an allowed claim "secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such

---

[3] Doc. 17, 2.

4

property."[4] A debtor's estate includes all legal and equitable interests of the debtor in property as of the commencement of the case.

Section 1322(b)(2) provides a plan may modify the rights of secured creditors. Section 1325(a)(5) defines a permitted modification, which is commonly referred to as cramdown. That subsection provides "with respect to each allowed secured claim," a plan may be confirmed without the secured creditor's consent when, among other things, the plan provides "the value, as of the effective date of the plan, of payments to be distributed [to the creditor] is not less than the allowed amount of the secured claim" and "the holder of such claim retain the lien securing such claim until the earlier of – the payment of the underlying debt determined under nonbankruptcy law; or discharge under section 1328." Creditor objects to both aspects of the cramdown proposed by Debtor, value of the Vehicle and the extent of lien release. Resolution of these conflicting positions requires the Court to address the details of cramdown when only one of two co-purchasers of the collateral securing the purchase loan files for Chapter 13 relief.

## B. The amount of the secured claim

Creditor objects to the $13,004 collateral value included in Section 11 of the plan, contending that the value should be $20,854, the retail value of the

---

[4] 11 U.S.C. § 506(a)(1).

Vehicle, as stated in the JD Power valuation. In other words, Creditor contends for purposes of cramdown, its collateral should be valued at full value, even though Debtor is not the only owner of the Vehicle. The Court disagrees.

Debtor and Co-debtor jointly purchased the Vehicle and agreed to be jointly and severally liable for the obligation incurred. Creditor therefore has a claim in Debtor's bankruptcy for the entire outstanding balance of the purchase loan. In accord with §506(a)(1), the secured portion of that claim is measured by the estate's interest in the Vehicle. A leading commentator states:

> The interest of the estate in the collateral may be something other than a full ownership interest. The debtor may not be the sole owner of the collateral, but may hold only a partial ownership interest. In cases such as these, the value of the estate's interest in the collateral may be significantly less than the value of the collateral itself.[5]

When Debtor and Co-debtor purchased the Vehicle, they became owners as tenants in common, with each owning an undivided one-half interest. Under Kansas law, when property is conveyed to two people a tenancy in common is created, unless the language used "makes it clear that a joint

---

[5] 4 Collier on Bankruptcy ¶ 506.03[5][a] (Richard Levin & Henry J. Sommer eds.-in-chief, 16th ed. 2018).

tenancy was intended to be created."[6] Kansas law also presumes that tenants in common have equal ownership.[7] The contract for purchase of the Vehicle does not evidence intent to create a joint tenancy. The parties have not suggested the Vehicle is owned other than as tenants in common with equal ownership.[8]

Since Debtor owns only an undivided one-half interest in the Vehicle, the estate's interest is also an undivided one-half interest. This means for the purpose of Debtor's Chapter 13 plan the value of the collateral securing Creditor's claim is equal to one-half of the full value of the Vehicle. The Chapter 13 estate has no interest in Co-debtor's undivided one-half interest, and, with respect to Debtor's Chapter 13 plan, Creditor's claim is not secured by that interest.

The contention that the value of a secured claim must include the value of a non-debtor co-tenants' interests in collateral has been rejected by other courts. In *Beach*,[9] debtor mortgaged his one-fourth interest in a ranch to a

---

[6] K.S.A. 58-501; see *Kirkpatrick v. Ault*, 177 Kan. 522, 566, 280 P.2d. 637, 640 (1955).

[7] *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978).

[8] The record includes a copy of the Title and Registration Receipt - Lienholder Copy. The "Primary Owner Names" are "Kuehn, Kerry H" and "Buttel Vicki Lyn."

[9] *In re Beach*, 169 B.R. 201 (D. Kan. 1994).

7

creditor, but proposed a Chapter 12 plan premised upon the theory that the value of the entire tract should be considered when determining if the creditor was over secured. The District Court for the District of Kansas denied this argument, citing § 506(a) and stating debtors' argument "fails to explain how the bankruptcy estate can have an interest in the 75% undivided portion of the [ranch] the debtors do not own. The Bankruptcy Code does not contemplate the inclusion of interests of nondebtors into the bankruptcy estate."[10]

In *Lower*,[11] the Colorado bankruptcy court applied § 506(a)(1) to the valuation of claims secured by jointly owned personal property. Under Colorado law, like Kansas law, absent an agreement to the contrary, tenants in common are presumed to own equal shares in the property. The debtor granted creditors security interests in boats in which he owned undivided one-half interests. After filing under Chapter 7 and converting to Chapter 11, the debtor moved to convert to Chapter 13. The United States Trustee and the owner of the other one-half interests in the jointly owned collateral opposed the debtor's motion. They argued the debtor was not eligible for Chapter 13 because when § 506(a) was properly applied the debtor's total unsecured debts

---

[10] *Id.* at 203-204.

[11] *In re Lower*, 311 B.R. 888 (Bankr. D. Colo. 2004).

exceeded the allowable limits. In response, the debtor contended the creditors' secured claims were measured by the full value of the collateral, thereby reducing his unsecured debts. Relying on § 506(a)(1), the court held the collateral for each secured claim was limited to the estate's interests in each of the boats, which was one-half of the value of the respective assets.

Cramdown requires the value of property to be distributed under a plan to a secured creditor be "not *less* than the allowed amount of such claim." [12] This means the plan must pay the *at least* the value of Debtor's interest in the Vehicle. Contrary to Creditor's objection to confirmation, Debtor is not required to value the collateral at the full retail value.

In light of the foregoing analysis, Debtor may file an amended plan with a different collateral value. Such amendment is not precluded by any agreement which may have been reached between Debtor and Creditor.

### C. Lien Release

Debtor and Creditor have different understandings of the lien release portions of Section 11 of the model plan. That section of the model plan provides, "Any secured creditor whose debt is secured by personal property will retain its lien pursuant to § 1325(a)(5) and shall be required to release the lien at the time designated by § 1325(a)(5)." As quoted above, one of the

---

[12] 11 U.S.C. § 1325(a)(5)(B)(ii) (emphasis added).

conditions for § 1325(a)(5) cramdown is that with respect to each allowed secured claim provided for by the plan "the holder of such claim retain the lien securing such claim until the earlier of – the payment of the underlying debt determined under nonbankruptcy law; or discharge under section 1328."[13] Debtor contends the plan should be understood to provide that at the time of discharge Creditor is required to release the lien granted in the purchase agreement so the Vehicle is owned free and clear of liens. Creditor, on the other hand, contends because Co-debtor remains liable on the remaining debt after Debtor's discharge, no lien release is required at the time of discharge.

Since the lien release portion of Section 11 of the model plan merely incorporates the Code, resolution of this dispute is a matter of statutory construction of § 1325 and related sections. Section 1322(b)(2) permits a plan to modify the rights of holders of secured claims. Section 1325(a)(5) provides that respect to "each allowed secured claim provided for by the plan," the plan may release the "the lien securing such claim." The word "such" refers to the "allowed secured claim provided for by the plan." As discussed above, for purposes of the Chapter 13 plan of a debtor who owns only an undivided interest in the collateral pledged to a creditor, the creditor's allowed claim is secured by the estate's interest in the collateral, which is the debtor's partial

---

[13] 11 U.S.C. § 1325(a)(5)(B)(i)(I).

interest in the collateral. Therefore, in this case, the lien subject to release is the lien securing Creditor's claim against the Debtor in her a one-half interest in the Vehicle. The Creditor's lien granted by the Co-debtor who is jointly liable for the debt does not secure Creditor's allowed secured claim owed by Debtor and is not released.

There is nothing in the Code requiring release of Creditor's entire interest in the Vehicle upon Debtor's discharge. Lien release is not a consequence of discharge; it is a result of completion of plan payments of a secured claim that has been crammed down. Section 524, addressing the effect of discharge, provides a discharge "operates as an injunction against . . . any act to collect, recover, or offset any [discharged] debt as a personal liability of the debtor." The effect of discharge does not include release of the lien securing the discharged debt. Further, § 524(e) provides, "discharge of a debt of the debtor does not affect the liability of any other entity on, or property of any other entity for, such debt." Other than the co-debtor stay of § 1301, the Code does not authorize modifications of Creditor's rights against Co-debtor in circumstances of the case. Modification of Creditor's allowed secured claim will occur through plan confirmation, but that plan will address only the claim of secured creditor against Debtor and her property.

*Flournoy*,[14] a case arising in circumstances very similar to this case, thoroughly analyzed the relevant Code sections regarding lien release. In *Flournoy*, the creditor that financed the Chapter 13 debtor and her friend's joint purchase of a vehicle as tenants in common objected to confirmation of the debtor's plan, which proposed payment of the full joint debt as a secured claim, with interest at 5.5%. As in this case, although the plan did not expressly address the lien securing the co-debtor's liability, the creditor interpreted the plan as requiring elimination of lien in vehicle in full when the debtor was discharged, even though the joint purchaser would remain liable for the remaining debt based upon the difference between the plan and the contract rates of interest. The creditor therefor objected to confirmation, arguing "the plan's purported elimination of the lien as a means to collect the co-debtor's liability from the vehicle exceeds the authority of § 1322(b)(2)"[15] allowing modification of the rights of secured creditors in a plan. The court agreed. The creditor's claim against the co-debtor was not a claim against the

---

[14] *In re Flournoy*, 570 B.R. 293 (Bankr. E.D. Wis. 2017).

[15] *Id.* at 298. The creditor also argued that full release was contrary to § 524(e), providing that discharge of debts of the debtor does not affect liability of any other entity for the debt. The court held that the creditor's argument "improperly conflates the effect of discharge and the claim-modifying effect of a chapter 13 plan," since "discharge does not affect [the] creditors' lien rights in property, even the debtor's property." *Id.* at 295-96.

12

debtor or the debtor's property subject to modification under § 1322(b)(2). It therefore found it could confirm the proposed plan but with the understanding the plan modified the creditor's lien on the debtor's interest in the vehicle but left in tact the creditor's lien on the co-debtor's interest.[16]

Creditor cites several cases in support of its position. The most helpful is *Leonard*.[17] As in this case, the Chapter 13 debtor and a non-filing co-debtor had granted a creditor a lien in a vehicle to secure a debt jointly incurred for its purchase. Upon completion of plan payments and entry of discharge, the Chapter 13 debtor moved for an order requiring the creditor to release its lien on the vehicle. The Court denied the request. It reasoned that upon completion of the plan, although the debtor was released from personal liability, the co-debtor remained liable for the remaining deficiency and the creditor therefore retained a lien since it had not been fully paid. Without considering whether the debtor was entitled to release of the lien on her interest, the court simply held until the deficiency balance was received the creditor was "not required to release its lien and surrender the title."[18]

---

[16] *Id.* at 300.

[17] *In re Leonard*, 307 B.R. 611 (Bankr. E.D. Tenn. 2004).

[18] *Id.* at 614.

*Leonard* and *Flournoy* were cited with favor in *Coffey*,[19] which provided a more thorough analysis. The court rejected a motion to reopen a Chapter 13 case to assert violation of the discharge injunction. The debtor had paid the creditor the full value of the debt plus 5.25% interest through her Chapter 13 plan. Post discharge the nonfiling co-debtor remained personally liable for the unpaid contract interest, and the creditor repossessed the vehicle after the co-debtor failed to pay the balance. The court held that reopening the case would be futile. It relied on § 524(e), providing discharge of the debtor does not affect the liability of any other entity or the property of any other entity for a discharged debt. In addition, pursuant to § 1325(a)(5), the lien release provision in the debtor's Chapter 13 plan released the creditor's lien only as to the debtor upon the debtor's discharge. The creditor's "lien survived the Debtor's Chapter 13 discharge as to the non-filing Chapter 13 Codebtor's separate interest in the Vehicle and that [creditor] was not prohibited from enforcing its lien and repossessing its collateral from the Codebtor by the Debtor's discharge."[20]

Debtor's arguments in support of release of the full lien are not convincing. First, she criticizes the cases relied on by Creditor, particularly

---

[19] *In re Coffey*, 637 B.R. 879 (Bankr. N.D. Ala. 2022).

[20] *Id.* at 888.

14

*Leonard*, which she contends "operates on the legal fiction" that because a creditor has only one lien against a vehicle, and cannot release the lien as to the debtor leaving the lien against the co-debtor in tact. This is a misunderstanding of the law of secured transactions based upon failure to account for the consequences of ownership as tenant in common. A creditor can release one co-owner from a security agreement without disturbing its lien in the same collateral granted by a different co-owner. Debtor also argues *Leonard* improperly prioritizes preservation of the creditor's lien over the debtor's fresh start. Of course, the fresh start policy does not trump the express provisions of the Code. *Smith*[21] is the only case cited by Debtor as supporting her position, but it does not address lien release upon discharge of a debtor who is jointly liable for a debt secured by a collateral jointly pledged to the creditor by debtor and a non-filing co-owner.

For the foregoing reasons, the Court concludes that § 1322 and the cramdown conditions of § 1325 do not authorize plan modification of Creditor's rights against Co-debtor or the Co-debtor's interest in the Vehicle. The § 1325(a)(5) requirement that the secured creditor whose claim is crammed down release its lien at the time of Debtor's discharge reaches only to the Debtor's interest in the Vehicle.

---

[21] *In re Smith*, 287 B.R. 882 (Bankr. W.D. Tex. 2002).

Neither of the interpretations of Section 11 of the model plan asserted by Debtor or Creditor are correct. Contrary to Debtor's position, cramdown does not require Creditor to release the lien of Co-debtor's interest. Contrary to Creditor's position, cramdown does not allow Creditor to retain its lien in the entire Vehicle; Creditor must release its lien in Debtor's interest in the Vehicle, but not in Co-debtor's interest.

The Court denies confirmation of Debtor's plan because use of Section 11 of the model plan is not appropriate in this case. To obtain confirmation, Debtor must file an amended plan with a non-standard provision addressing lien release in a manner consistent with this opinion.

## III. Conclusion

For the forgoing reasons, the Court sustains Creditor's objection to Debtor's proposed Chapter 13 plan. Creditor's claim is for Debtor's joint liability on a note for the purchase of a vehicle jointly with nondebtor Co-debtor. Both obligors jointly executed a security agreement granting Creditor a lien in the Vehicle. Debtor's plan cramming down secured Creditor's claim must provide that the value of the collateral is at least the value of the Debtor's partial interest in the Vehicle. Because the Court has not previously addressed the valuation of collateral for the purpose of cramdown under circumstances similar to this case, Debtor may, if she wishes, amend the plan

16

to provide a collateral value different from originally proposed and from any value agreed to with Creditor. Debtor's plan using Section 11 of the model plan regarding release of liens in personal property will not be confirmed. To obtain confirmation, Debtor must file an amended plan with a non-standard provision addressing lien release in a manner consistent with this opinion.

**It is so ordered.**

###